# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER HARRIS, | Case No. 1:25-cv-0029-JLT-BAM (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF ACTION FOR FAILURE TO STATE A CLAIM |
| v. | |
| FELIX, *et al.*, | (ECF No. 16) |
| Defendants. | **FOURTEEN (14) DAY DEADLINE** |

Plaintiff Christopher Harris ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed a complaint which the Court struck for being unsigned. The Court screened Plaintiff's first amended complaint, and Plaintiff was granted leave to amend. Plaintiff's second amended complaint is before the Court for screening. (ECF. No. 16.)

## I.    Screening Requirement and Standard

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*,

1

572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

## II.      Plaintiff's Allegations

Plaintiff is currently housed at California Men's Colony.  Plaintiff alleges the events occurred when he was housed at California Substance Abuse and Treatment Facility ("SATF").  Plaintiff names as defendants:  (1) Felix, correctional sergeant, (2) Urban, correctional lieutenant, (3) B. Phillips, Warden.

In claim 1, while not entirely clear, Plaintiff alleges an Eighth Amendment violation for threat to safety.  Plaintiff alleges that on 5/20/24 in unit #4 Plaintiff witnessed about 10 – 20 correctional officers, male and females, enter the unit, went immediately to inmate cell doors and pulled them out and ordered them to line up by the benches.  They told the inmates to strip all of their clothing and in front of females with functioning cameras they were wearing and other inmates.

The officers made it to Plaintiff's door, and he and his cellie were ordered to come out and strip out.  Plaintiff was placed into the shower naked, although Plaintiff immediately presented his "transgender access card."  It was not addressed. Defendants Sgt. Felix and Lt. Urban were present and giving orders.  Sgt. Felix and Lt. Urban had knowledge and acquiescence of the violations of Plaintiff's rights and were in a position to correct the violations but did not.

Defendants Urban and Felix had personal involvement through orders given at their personal direction. They ordered subordinates to impose illegal acts and failed to correct a wrong. They created a policy or custom under which unconstitutional actions occurred and allowed such policy or custom to continue.

Plaintiff authored grievances about the problem.

2

Plaintiff alleges that Defendant Phillips had knowledge of and acquiescence of the issues. (ECF No. 16 at 9.)  Phillips was made aware of this incident and others and Plaintiff did not receive any response from his office.  Phillips' conduct was intentional and purposeful.

Plaintiff alleges that Plaintiff "does not object to defendants strip search procedures but to the defendants deliberate acts of 'prolonged nakedness' which was unnecessary and unwarranted pursuant to the circumstances of the search."  (ECF No. 16 at 10.)  Leaving Plaintiff in the dayroom shower and on the dayroom floor naked for an unjustifiable length of time.  Defendants Urban and Felix gave express and direct orders to have Plaintiff with other inmates placed naked in the showers and on the dayroom floor for a long length of time with cameras attached to officers' vests and are therefore responsible for constitutional violations.

Plaintiff alleges that their aim was to intimidate Plaintiff, cause disorder, and dissuade Plaintiff from taking further action against them legally.  The actions were not justifiable and did not further a penological interest.

The rest of Plaintiff's complaint consists of legal argument and case citations.

Plaintiff attaches several exhibits to the complaint.  The Court has reviewed these exhibits. In a 602 grievance, Plaintiff alleges that he was taken to the showers and stripped out. Plaintiff states that the C/O never turned off his camera.  The female C/O in the tower had a full view of Plaintiff, and other C/O's on the floor were recording all of the incident.

Plaintiff suffered humiliation, emotional distress, paranoia, and fear for his safety.  As remedies, Plaintiff seeks compensatory and punitive damages.

**III.   Discussion**

**Supervisory Liability**

Insofar as Plaintiff is attempting to sue Defendant Warden, or any other defendant, based solely upon his supervisory role, he may not do so.  Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior.  *Iqbal*, 556 U.S. at 676–77; *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

3

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989*); accord Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011); *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d at 570. Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), abrogated on other grounds by *Farmer v. Brennan*, 511 U.S. 825 (1970). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

Plaintiff alleges vague and conclusory allegations and has failed to state factual support for supervisory liability of the warden.

**Fourth Amendment – Strip Searches**

"The Fourth Amendment prohibits only unreasonable searches." *Bell v. Wolfish*, 441 U.S. 520, 558 (1979). Courts regularly recognize the importance and difficulty of keeping detention facilities free from drugs, weapons, and other contraband. *Id*. at 559; *see also Way v. Cty. of Ventura*, 445 F.3d 1157, 1161 (9th Cir. 2006). However, courts also recognize the "frightening and humiliating invasion" occasioned by a strip search "even when conducted with all due courtesy." *Way*, 445 F.3d at 1160 (internal quotation marks omitted*); Byrd v. Maricopa Cty. Sheriff's Dep't*, 629 F.3d 1135, 1143 (9th Cir. 2011). Although some visual body cavity searches of prisoners may be reasonable, others can "be excessive, vindictive, harassing, or unrelated to any legitimate penological interest." *Michenfelder v. Sumner*, 860 F.2d 328, 322 (9th Cir. 1988)

4

("[I]ncarcerated prisoners retain a limited right to bodily privacy."). There is no precise definition to assess reasonableness, and each case "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Bell*, 441 U.S. at 559. The prisoner "bears the burden of showing that [prison] officials intentionally used exaggerated or excessive means to enforce security." *Thompson v. Souza*, 111 F.3d 694, 700 (9th Cir. 1997) (quoting *Michenfelder*, 860 F.2d at 333) (finding visual body cavity search conducted in full view of other inmates and intended to detect illicit drugs was reasonably related to a legitimate penological interest).

To the extent Plaintiff alleges that Defendant was "not authorized" to conduct an unclothed search of his body, Plaintiff fails to state a cognizable. Routine strip searches have been held constitutional. *See generally Michenfelder v. Sumner*, 860 F.2d at 333. However, Plaintiff alleges that the strip search was done in a manner to invade his privacy by recording the search on body worn camera. "The [Supreme] Court [has] obviously recognized that not all strip search procedures will be reasonable; some could be excessive, vindictive, harassing, or unrelated to any legitimate penological interest." *Michenfelder*, 860 F.2d at 332.

Plaintiff fails to state a Fourth Amendment violation for conducting the strip searches with an activated body camera. It is unclear which of the Defendants, if any, had activated body cameras in proximity to Plaintiff, when Plaintiff was placed in the shower. It appears that neither Defendant was near Plaintiff with activated body camera. Indeed, Plaintiff does not allege that Defendants were recording the strip search. Plaintiff appears to challenge that the cameras were activated during the search but does not name specific actors.

Plaintiff alleges that Defendants Urban and Felix gave express and direct orders to have Plaintiff with other inmates placed naked in the showers and on the dayroom floor for a long length of time with cameras attached to officers' vests and are therefore responsible for constitutional violations. But Plaintiff fails to allege that the orders that were given by Defendants Felix and Urban were to conduct searches with activated cameras. Rather, he alleges they gave orders and subordinates violated Plaintiff's rights, and therefore, Defendants Felix and Urban are responsible. Plaintiff's conclusory allegations that they "ordered subordinates to impose illegal

acts and failed to correct a wrong," and "created a policy or custom under which unconstitutional actions occurred" are insufficient. Plaintiff fails to allege that the orders that were given by Defendants Felix and Urban were to conduct searches with activated cameras. Rather, he alleges they gave orders and subordinates violated Plaintiff's rights, and therefore, Defendants Felix and Urban are responsible. This is insufficient for Defendants' individual liability.

Plaintiff appears to allege that because he is transgender he should not have been strip searched in front of others or in front of other genders. An Eighth Amendment violation has been found where the female prisoner plaintiffs, found to be particularly vulnerable to a severe psychological injury from the search, are subjected to random cross-gender clothed body searches unrelated to prison security. *Jordan v. Gardner*, 986 F.2d 1521, 1525–28 (9th Cir. 1993) (finding cross-gender body search policy constituted unnecessary "infliction of pain" under the Eighth Amendment where women inmates had "shocking histories of verbal, physical, and, in particular, sexual abuse" by men). In the Fourth Amendment context, the Ninth Circuit concluded that a cross-gender strip search of a pretrial detainee in a non-emergency situation where same-sex guards were available was an unreasonable intrusion on the detainee's Fourth Amendment rights. *Byrd v. Maricopa Cty. Sheriff's Dep't*, 629 F.3d 1135, 1142 (9th Cir. 2011) (*en banc*); *see also Shorter v. Baca*, 895 F.3d 1176, 1189 (9th Cir. 2018) (under Fourteenth Amendment challenge, court concluded that county's search practices were not entitled to deference where county did not offer reason for leaving mentally ill female inmates shackled to their cell doors for hours, virtually unclothed, and without access to meals, water or a toilet, visible to both male and female prison guards on patrol).

Although a cross-gender strip search that involves touching the inmate's genitalia and searching inside his anus is unreasonable, *Byrd*, 629 F.3d 1135, 1142 (9th Cir. 2011) (en banc), that does not mean that all cross-gender searches are unreasonable, or that prisoners of one gender may not be guarded by guards of the other gender. *Uvalles v. Jaquez*, No. C 09-5221 RMW PR, 2013 WL 1283390, at *8–9 (N.D. Cal. Mar. 27, 2013). In *Grummett v. Rushen*, 779 F.2d 491, 494 (9th Cir. 1985), the Ninth Circuit upheld a system of assigning female officers within a correctional facility such that they occasionally viewed male inmates in various states of undress

and conducted routine pat-downs of fully clothed inmates. *Id.*, citing *Byrd*, 629 F.3d at 1142. Assigned positions of female guards that required only infrequent and casual observation, or observation at a distance, of unclothed male prisoners and that are reasonably related to prison needs are not so degrading as to warrant court interference. *Id.*, citing *Michenfelder v. Sumner*, 860 F.2d 328, 334 (9th Cir. 1988) (held that routine visual body cavity searches conducted in hallways did not violate the Fourth Amendment after situations where inmates had been presented with the opportunity to obtain contraband or a weapon); *see also Jordan*, 986 F.2d at 1524–25 (en banc) (privacy interest in freedom from cross-gender clothed body searches not "judicially recognized").

Plaintiff alleges that Plaintiff "does not object the defendants strip search procedures but to the defendants deliberate acts of 'prolonged nakedness' which was unnecessary and unwarranted pursuant to the circumstances of the search. (leaving Plaintiff in [the]shower and on the dayroom Floor naked for an unjustifiable length of time.)"  Given this allegation, it is unclear what Plaintiff is complaining about for the search.  Plaintiff fails to allege the duration of the time he was in the shower during the search.  His conclusory allegation of "prolonged" or lengthy is insufficient.  Temporary unconstitutional conditions of confinement do not necessarily rise to the level of constitutional violations. *See Anderson v. Cty. of Kern*, 45 F.3d 1310, 1315 (9th Cir.), opinion amended on denial of reh'g, 75 F.3d 448 (9th Cir. 1995), abrogated on other grounds by *Sandin*, 515 U.S. 472 (in evaluating challenges to conditions of confinement, length of time the prisoner must go without basic human needs may be considered)).

**Retaliation**

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim.  *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did

not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005); *accord Watison v. Carter*, 668 F.3d 1108, 1114-15 (9th Cir. 2012); *Silva*, 658 at 1104; *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

Plaintiff has failed to allege the facts for each of the elements of a claim for retaliation against any defendant. While Plaintiff alleges he engaged in protected conduct of filing grievances, he does not allege if and how any defendant was aware of such appeals. The allegations appear to lack an adverse action because every inmate was strip searched. Plaintiff also fails to allege that any conduct chilled Plaintiff's First Amendment rights or that it did not reasonably advance a legitimate correctional goal. Plaintiff provides no further factual assertions to support a claim for retaliation. Merely stating that actions were taken as retaliation for filing complaints, without more, does not state a cognizable claim. Plaintiff's conclusory allegations are not sufficient.

**Grievance Process**

Plaintiff appears to allege that Defendant Phillips violated Plaintiff's rights based on actions he took in reviewing grievances regarding the incident at issue in the complaint. However, Plaintiff cannot pursue any claims against warden, staff or anyone else relating to their involvement in the administrative processing or review of her prisoner grievances. The existence of an inmate grievance or appeals process does not create a protected liberty interest upon which Plaintiff may base a claim that she was denied a particular result or that the process was deficient. *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988).

**Doe Defendants**

Plaintiff alleges that officers engaged in the strip search and included "et al" in the caption of the case. "As a general rule, the use of 'John Doe' to identify a defendant is not favored." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). Plaintiff is advised that John Doe or Jane Doe defendants (i.e., unknown defendants) cannot be served by the United States Marshal until Plaintiff has identified them as actual individuals and amended his complaint to substitute names for John Doe or Jane Doe.

**IV.    Conclusion and Recommendation**

Plaintiff's second amended complaint fails to state a cognizable claim under 42 U.S.C. § 1983.  Despite being provided with the relevant pleading and legal standards, Plaintiff has been unable to cure the identified deficiencies.  Further leave to amend is not warranted.  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Accordingly, it is HEREBY RECOMMENDED that this action be dismissed for failure to state a cognizable claim upon which relief may be granted.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within **fourteen (14) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  **Objections, if any, shall not exceed fifteen (15) pages or include exhibits.  Exhibits may be referenced by document and page number if already in the record before the Court.  Any pages filed in excess of the 15-page limit may not be considered.**  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **April 8, 2026**                    /s/ *Barbara A. McAuliffe*
                                          UNITED STATES MAGISTRATE JUDGE

9